UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| CLAY R. BOYD AND CODY W. BOYD | * | CIVIL ACTION NO. 07-1984 |
|---|---|---|
| VERSUS | * | JUDGE JAMES |
| SOUTHERN NATIONAL LIFE INSURANCE COMPANY, INC. | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a petition for benefits under a welfare plan governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.[1] For reasons stated below, it is recommended that plaintiffs' claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

## STATEMENT OF FACTS

On, or about April 1, 2003, Keith Rushing, Inc. d/b/a Monroe Packaging (hereinafter "Monroe Packaging") established a group insurance benefit plan ("the Plan") with Southern National Life Insurance Company ("Southern National") to provide Monroe Packaging's employees with life and accidental death and dismemberment insurance. *See*, Administrative Record Bates Page Nos. 1-3.[2] The Plan constitutes an employee welfare benefit plan as contemplated under ERISA. (April 14, 2008, Judgment [doc. # 16]; *see also*, *Brandon v.*

---

[1] The parties submitted the matter for decision on the administrative record. *See*, November 26, 2007, Civil Case Management Order.

[2] The court will abbreviate citation to the Administrative Record as "AR" immediately followed by the applicable Bates page number.

*Travelers, Ins. Co.*, 18 F.3d 1321, 1324 (5th Cir. 1994) (life insurance policy is welfare plan under 29 U.S.C. § 1002(1)(A)).

From February 21, 2005, until July 26, 2005, Anne Boyd was employed by Monroe Packaging as an administrative bookkeeper. (AR 3, 40, 43). She became a covered employee under the Plan effective June 1, 2005. (AR 43). Boyd designated her sons, Clay R. Boyd and Cody Boyd, as beneficiaries on her life insurance policy. (AR 3). Tragically, Anne Boyd passed away on December 29, 2006. (AR 42-43).

On January 17, 2007, Monroe Packaging's Comptroller, Bob Palmieri, signed and submitted an application to Southern National for group life insurance proceeds stemming from Boyd's death. (*See*, AR 40-41).[3] On March 8, 2007, Southern Life denied life insurance benefits under the Plan because at the time of Boyd's death, it had been more than one year since she was last employed at Monroe Packaging, and her employer did not extend her coverage by complying with the Plan provision for "Extension of Life Insurance During Total Disability." (AR 43).

On March 23, 2007, attorney Robert Sharp, Jr., wrote a letter to Southern National stating that he represented the estate of Anne Boyd, and inquiring about making a claim under the policy. (AR 44). On April 6, 2007, Southern National replied that although Monroe Packaging continued to pay life insurance premiums on behalf of Ms. Boyd until the time of her death, "the contract should have been terminated one year after Ms. Boyd left employment." (AR 45). Again, Southern National emphasized that it never received a waiver of premium request to continue Boyd's life insurance coverage within one year from the date that she last worked. *Id*.

On September 25, 2007, Clay and Cody Boyd filed the instant suit against Southern

---

[3] The application included a purported assignment of life insurance benefits from Boyd's beneficiaries to a funeral home. (AR 40-41). Under the Plan, assignment is authorized with the written approval of the policyholder. (Plan, AR 35).

National in the Ruston Municipal City Court, Lincoln Parish, State of Louisiana. Plaintiffs alleged that Southern National arbitrarily and wrongfully refused to pay the $10,000 life insurance benefits payable to them as beneficiaries under Anne Boyd's life insurance policy. (*See*, Petition, ¶ 8). In addition to the policy proceeds, plaintiffs sought interest, attorney's fees, and penalties pursuant to Louisiana Revised Statute 22:656. *Id*. On November 19, 2007, Southern National removed the case to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (Notice of Removal).

In accordance with the court's civil case management order, Southern National filed a motion for summary judgment on January 28, 2008, seeking a determination that the Plan was an ERISA plan and therefore that all of plaintiffs' state law claims were preempted. On April 14, 2008, the district court granted defendant's unopposed motion for summary judgment and held that 1) the subject plan is governed by ERISA, 2) Southern National does not have discretionary authority, and 3) all of plaintiffs' state law claims are preempted by ERISA. (April 14, 2008, Judgment). The court subsequently issued a briefing schedule so the parties could submit the matter for decision on the administrative record. (May 12, 2008, ERISA Briefing Order). Briefing is now complete, and the matter is before the court.

## LAW AND ANALYSIS

**I     Standard of Review**

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998)(citation omitted). To achieve these goals, ERISA requires every employee welfare benefit plan to,

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been

> denied, setting forth the specific reasons for such denial, written in
> a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim
> for benefits has been denied for a full and fair review by the
> appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

When deciding whether to pay or deny benefits, a plan administrator must make two general types of determinations: "[f]irst, [s]he must determine the facts underlying the claim for benefits. . . . Second, [s]he must then determine whether those facts constitute a claim to be honored under the *terms* of the plan." *Schadler*, 147 F.3d at 394 (citation omitted)(emphasis in original). If a plan participant has been denied benefits, then ERISA permits a claimant to bring suit in federal court "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

Under ERISA, the factual determinations made by the plan administrator[4] are reviewed for abuse of discretion. *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100-101 (5th Cir. 1993) (citing *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir.1991)).[5] However, a

---

[4] The parties have not directed the court to any plan documents identifying Southern National as the plan administrator. However, in its unopposed motion for summary judgment, Southern National strongly implied that it was the plan administrator. *See e.g.*, Def. Memo., pgs. 2-3. Moreover, in light of Southern National's role as Plan insurer and de facto claims adjudicator it is effectively the plan administrator. *See generally, Estate of Bratton v. National Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 522 n7 (5th Cir. 2000) (insurer was in effect the plan administrator).

[5] In the case *sub judice*, the parties argue that the facts are undisputed or that there are no material issues of fact. In its brief, however, Southern National asserts that Monroe Packaging stopped paying life insurance premiums for Anne Boyd in February 2006. (Def. Memo., pg. 3). In contrast, plaintiff asserts that Monroe Packaging continued paying premiums on behalf of Boyd until the time of her death. (Pl. Memo., pg. 2). While there is evidence that Monroe Packaging attempted to cease making premium payments on behalf of Ms. Boyd in February 2006, Southern National determined that Monroe Packaging continued to pay life insurance premiums on behalf of Boyd until the time of her death. (AR 45, 57). Southern National is in the best position to know when Monroe Packaging actually stopped making premium payments

plan administrator's interpretation or application of the plan is reviewed de novo "'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Aboul-Fetouh v. Employee Benefits Committee*, 245 F.3d 465, 471-472 (5th Cir. 2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956-57 (1989)). Here, the court has already determined that Southern National does not enjoy discretionary authority; thus issues of plan term interpretation are reviewed de novo. *See*, April 14, 2008, Judgment.

**II.     Discussion**

Federal common law governs the construction of policy provisions in an ERISA case. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (citations omitted). When construing ERISA plan provisions, the court interprets the contract language "'in an ordinary and popular sense as would a person of average intelligence and experience,' such that the language is given its generally accepted meaning if there is one." *Id*. (quoted source omitted). If the plan remains ambiguous after applying ordinary principles of contract interpretation, the court must then apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured. *Id*.

Here, the court finds no ambiguity. The Plan is obliged to pay life insurance benefits when an employee dies while insured under the policy. (Plan, AR 16). However, life insurance

---

on behalf of Ms. Boyd. Moreover, Southern National's finding is advocated by the beneficiaries/plaintiffs and is arguably a finding against the insurer's own interests. Accordingly, the court finds that the plan administrator's factual determination did not constitute an abuse of discretion regardless of any un-asserted conflict of interest. In any event, resolution of this factual issue does not affect the outcome of the case. *See* discussion, *infra*.

5

coverage terminates for employees as follows,

## TERMINATION OF INSURANCE
### (Applicable to Life Insurance For Employees)

The insurance on an Employee will *cease on the earliest date below* except as otherwise provided in the "Extension of Life Insurance during Total Disability" section:

(1) the date the Employee ceases to be in a Class of Eligible Employees *or ceases to qualify as an Employee*;

(2) the last day for which the Employee has made any required contribution for the insurance;

(3) the date the policy is cancelled. [sic]

(4) the date the Employee attains the age shown in the Schedule of Benefits.

*If employment ends, Employee's insurance shall continue until the end of the period*, either premium payment was made *or thirty-one (31) days, whichever is shorter*, except as set forth below:

\*   \*   \*

**INJURY OR SICKNESS**
In [sic] an Employee's Active Service ends due to an injury or a sickness, the insurance will be continued while the Employee remains totally and continuously disabled as a result of the injury or sickness. However, the insurance will not continue *past the earlier of*:
    (a) *one year from the date the Employee's Active Service ends unless the Policyholder obtains the Company's consent in writing to a longer period*; or
    (b) the date the Policy holder stops paying premium for the Employee or otherwise cancels the insurance.[6]

(Plan, AR 27-28) (emphasis added).

Southern National determined that Anne Boyd's last day of active work was July 26,

---

[6] The Plan provides two other exceptions entitled Temporary Layoff or Leave of Absence and Retirement. However, there is no evidence or argument that Anne Boyd took temporary leave or had retired.

2005. (AR 43).[7] Under the Plan, Boyd ceased to be an "employee" as of that date.[8] As a result, unless an exception applies, her life insurance coverage ceased no later than 31 days after July 26, 2005.

The Plan contemplates two potentially applicable exceptions to the termination clause. The first exception provides:

> **EXTENSION OF LIFE INSURANCE DURING TOTAL DISABILITY
> (Applicable Only As Stated in the Schedule of Benefits for Employees)**
>
> If an insured Employee terminates Active Service before age sixty (60) because of Total Disability (as defined below), and if the Policyholder ***stops paying premium for him***, his Term Life Insurance will be extended while he remains continuously Totally Disabled, ***but for no more than one (1) year from the date his Active Service ends***. . . .
>
> ***If the Employee submits due proof to the Company*** that he became Totally Disabled prior to his 60th birthday and has remained continuously Totally disabled for nine (9) months or more, his Term Life Insurance ***will be extended, without further payment of premiums for him, for a period of one (1) year from the date that proof is received by the Company***. Such proof must be submitted no later than one (1) year from the date his Active Service ends because of Total Disability. After that, his insurance will be extended without payment of premiums for him, for further periods of one year if :
>
> 1. he remains continuously Totally Disabled; and
>
> 2. he submits to the Company, during the three months prior to the end of each such one year period, proof of the continuation of total disability."

(The Plan, AR 47) (emphasis added).

---

[7] The parties do not contest this determination. There is evidence that Monroe Packaging terminated Boyd's employment on December 5, 2005 (incorrectly stated as 2006). (*See*, February 23, 2006, letter from Monroe Packaging to Blue Cross/Blue Shield; AR 57). However, this alternative date is also more than one year before Boyd's death, and does not affect the court's analysis.

[8] The Plan defines "Employee" as a "full-time Employee of the Employer." (Plan, AR 14).

7

Plaintiffs contend that the foregoing exception is inapplicable because Monroe Packaging continued to make premiums on behalf of Boyd and Boyd did not seek a waiver of premiums. (Pl. Memo., pg. 3).[9] The court agrees.

The second potentially applicable exception extends coverage for one year after an employee's active service ends due to injury or sickness. (*See*, Plan, AR 27). However, the extension does not extend more than one year after active service ceased, unless the policyholder obtained written consent from Southern National for a longer period. *Id*. Here, there is no evidence or argument that Monroe Packaging (or Boyd) obtained written consent from Southern National to extend the life insurance coverage beyond the automatic one year extension due to injury or sickness.

Plaintiffs essentially argue that because Monroe Packaging paid life insurance premiums on behalf of Boyd, coverage continued until her death. (Pl. Memo., pg. 3). However, the Plan unequivocally provides that life insurance coverage for an employee will cease *inter alia* when she ceases to be an employee. (Plan, AR 27). There is no applicable exception to this termination clause when an employer continues (mistakenly or otherwise) to make premium payments on behalf of the ex-employee. In fact, the Plan contains a provision for the refund of

---

[9] Indeed, there is no evidence that Southern National ever received an application for waiver of premium to continue Boyd's life insurance coverage. (*See*, AR 43).
The administrative record does contain evidence that Boyd sought to continue her coverage pursuant to COBRA (the Consolidated Omnibus Budget Reconciliation Act). (AR 57, 62). Moreover, although not raised by plaintiffs, the Plan contains a provision entitled Conversion Privilege for Life Insurance for Employees which permits employees to convert their life insurance coverage under the Plan to an individual life policy. (Plan, AR 19). However, there is no evidence that the COBRA application was an application for an individual life policy or that Southern National issued Boyd a Converted Life Policy. Also, although COBRA amended ERISA, it did not affect life insurance thereunder. *Robin v. Metropolitan Life Ins. Co.*, 147 F.3d 440, 442 n4 (5th Cir. 1998).

premiums erroneously paid on behalf of a person whose insurance coverage has ceased. (Plan, AR 35).[10]

For the reasons set forth above, de novo consideration of the relevant plan provisions compels the court to find that Anne Boyd was not covered under the Plan's life insurance provisions at the time of her death; thus, her beneficiaries are not entitled to the policy proceeds under the Plan. (Plan, AR 16).

Accordingly,

IT IS RECOMMENDED that plaintiffs' claims be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

---

[10] Under Louisiana law, every group life insurance policy is required to extend coverage for terminated employees "until the expiration of such period for which the premium for such employee or member has been paid, not exceeding thirty-one days." La. R.S. 22:175 (formerly La. R.S. 23:176(9)). However, the Fifth Circuit has suggested in dicta that the thirty-one day outside limitation runs from the date that the employee was terminated, not from the date that she was last covered. *See*, *Robin*, 147 F.3d at 439. Also, although courts may develop federal common law by drawing "guidance from analogous state law," courts may do so "only to the extent that state law is not inconsistent with congressional policy concerns." *Jones v. Georgia Pacific Corp.*, 90 F.3d 114, 116 (5th Cir. 1996). Here, there is no evidence or argument that importing a similar extension of coverage provisions into federal common law is consistent with Congress's intent as manifested in ERISA

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 27th day of August, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE